**Nationwide Mut. Ins. Co. v. Gingrich**

C.P. of Berks County, no. 09-2266.

*Edward J. McKarski*, for appellant.
*Daniel E.P. Bausher*, for appellee.

SCHMEHL, *P.J.*, June 21, 2010—Petitioner/appellant Nationwide Mutual Insurance Company ("appellant") appeals from this court's December 28, 2009 order, which denied appellant's petition to vacate revised arbitration award, and ordered that the revised order of the arbitrator, dated January 30, 2009, was thereby confirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant commenced the present action by filing with this court, on February 27, 2009, a "petition to vacate revised arbitration award issued January 30, 2009, together with application, pursuant to 42 Pa. C.S.A. §7342(b), for confirmation of arbitration award issued September 17, 2004" ("the petition"). In the petition, appellant described the underlying action. The underlying action began when respondent/appellee Scott Gingrich ("appellee") commenced an action against appellant, docketed with this court at 02-10292 ("the 2002 action"). Therein, appellee sought recovery of medical and wage benefit claims and other damages under a motor vehicle insurance policy issued by Nationwide, following a motor vehicle accident in early 2001, and which resulted in alleged spinal injury to appellee.

After the 2002 action was commenced, both parties entered into a release that memorialized their joint decision to resolve the matter at high/low arbitration ("the release"). The release, dated January 2004, designated Richard Orwig, Esquire as the arbitrator ("arbitrator Orwig"). The release terms specified that arbitrator Orwig would enter separate verdicts on all claims for wage benefits and outstanding medical bills, together with reasonable and recoverable attorney fees and interest under the MVFRL. The release

also delineated a number of rules and stipulations to apply to the arbitration before arbitrator Orwig.

Following arbitration held March 5, 2004, Arbitrator Orwig issued a detailed arbitration decision on September 17, 2004 ("Arbitration Decision"). The arbitration decision went through the basis for the decision, including the parties' respective positions, factual background, witness reports, testimony given, the injury itself, and an explanation of the medical facts and behavior of appellant, all of which led to arbitrator Orwig's decisions. The arbitration decision made the following three conclusions:

1) (Appellee) is entitled to receive and the (appellant) ordered to pay all past medical expenses incurred as of April 4, 2002. No determination is hereby being made as to future medical expenses as the determination of reasonableness and necessity cannot be made based upon the limited medical documentation provided.

2) (Appellee) is entitled to receive and (appellant) is ordered to pay lost wage benefits commencing February 1, 2002 through May 14, 2002, to be calculated pursuant to a twenty (20) hour work week.

3) The (appellant) had a reasonable foundation for disputing claimant's demand for wage loss and medical benefits. The (appellant) did not act in bad faith, and therefore, there is no award for attorney's fees, expenses, and interest.

See Exhibit "B" to the petition, filed February 27, 2009.

Three days after the issuance of the arbitration decision, on September 20, 2004, appellee sent a letter to arbitrator Orwig, requesting that he reconsider the decision. Appellee

based the request on three main reasons. First, under the release, the parties had agreed that if arbitrator Orwig found there was wage loss, then the wage loss would "consume the remainder of the wage loss benefits under (appellee's) policy with (appellant)"; however, arbitrator Orwig had awarded wage loss benefits through May 14, 2002, an issue not submitted for consideration. Second, appellee stated that arbitrator Orwig overlooked a piece of the evidence submitted, namely that Dr. Krassen had not provided work restrictions on the appellee, whereas that expert actually did, in his report, state that the appellee would have to likely permanently reduce his work from 75 hours weekly, down to 40 hours weekly of light duty. Third, appellee stated that arbitrator Orwig did not decide the issue of medical expenses and treatment as it was submitted to him, in that certain treatment was statutorily mandated to be paid by appellant, as were interest and attorneys' fees.

Arbitrator Orwig held conference October 20, 2004 with both parties to discuss the import of appellee's letter. Arbitrator Orwig memorialized the conference outcomes *that same day* in a letter to both parties. The letter rephrased appellee's grounds for the reconsideration, and reiterated that appellant *had already established his objections to the reconsideration requests*. The letter further indicated that, as previously discussed, appellant was to formally respond to the request for reconsideration, and that arbitrator Orwig would then issue a decision on the reconsideration by November 17, 2004. There was no follow up written response by appellant which raised any substantive response to the request for reconsideration, although appellant sent a letter on October 29, 2004 which asked for another hearing, seemingly duplicative of the

one just held.

A year later, counsel for appellee sent another letter to arbitrator Orwig, asking for a decision on the reconsideration. It was in response to this letter that appellant then sent his next correspondence, wherein stated that appellee had not made sufficient motion for reconsideration, despite appellee's letter three days after the decision, and appellant asked for a dismissal of the reconsideration request. A virtually identical pair of correspondence was sent just over another year later, in February of 2006.

The next notable event in the arbitration took place on March 10, 2008, where appellee again asked arbitrator Orwig for a decision on the reconsideration request. Appellant sent a responsive letter on March 18, 2008, stating that the arbitrator had never granted reconsideration, although this court notes the conference held October 2004 and correspondence surrounding same. Appellee further wrote arbitrator Orwig on April 24, 2008, again asking for a decision on the reconsideration.

On May 30, 2008, arbitrator Orwig held another conference, this time by telephone, with both parties. Subsequently, appellee renewed the request for a decision on the reconsideration by letter on June 4, 2008, which repeated the requests contained in the September 20, 2004 letter. Arbitrator Orwig then wrote a reply, indicating that he believed he had in his files sufficient materials to finally issue his decision on the reconsideration. Appellant then sent a responsive letter on June 11, 2008, stating that the request for reconsideration was not timely, but if arbitrator Orwig did find it to be, then reserving the right to reply on the merits *at some future time*, despite the

chance to do so within the same letter, the multiple chances to reply at previous conferences, and Arbitrator Orwig's recommendation to do so in his October 20, 2004 letter. Appellant sent a similar letter again on June 17, 2008.

Finally, arbitrator Orwig did issue a revised arbitration decision on January 30, 2009, albeit several years after the original decision. Appellant then acted and filed its February 27, 2009 petition. The revised arbitration decision made the following holdings:

A. Unpaid medical bills would be paid by nationwide, as well as interest;

B. The arbitrator awarded lost wage benefits of $20,000.00 to appellee as per the insurance policy; and,

C. The arbitrator awarded attorney fees exceeding $20,000.00 to appellee, after finding that the treatments were necessary.

Appellant filed the petition to vacate on February 27, 2009, as stated above. This court held argument on the petition on August 21, 2009. Following argument, on December 28, 2009, this court entered an order which denied the petition to vacate the revised arbitration award, and ordered that the revised order of the arbitrator of January 30, 2009 was thereby confirmed.

On January 27, 2010, appellant filed an appeal from the December 28, 2009 order. Appellant then filed a timely concise statement of errors complained of on appeal. On February 25, 2010, the prothonotary of this court entered the appellee's praecipe for judgment, in accordance with Pa. R.C.P. 236.

## II. DISCUSSION

Appellant complains of the following errors on appeal:

1. Whether the court committed an error of law in its order dated December 28, 2009 and entered December 29, 2009 by confirming revisions to an existing common-law arbitration award where the written arbitration agreement between Nationwide and Gingrich explicitly stated that the arbitration decision "on any legal, factual, evidential issue and verdict shall be final with no right of appeal absent clear and convincing proof of fraud or collusion," but where, despite objection by Nationwide, the arbitrator subsequently issued a revised arbitration award completely devoid of any finding or determination that the original arbitration award (1) was issued as a result of clear and convincing evidence of either fraud or collusion; (ii) was based upon fraud, misconduct, corruption or collusion; (iii) failed to adjudicate a primary issue that was submitted for arbitration; or (iv) contained simple mistakes and/or ambiguities that appeared on the face of the original arbitration award?

2. Whether the court committed an error of law in its order dated December 28, 2009 and entered December 29, 2009 by vacating an existing common-law arbitration award in favor of a revised arbitration award where the written arbitration agreement between Nationwide and Gingrich explicitly stated that the arbitration decision "on any legal, factual, evidential issue and verdict shall be final with no right of appeal absent clear and convincing proof of fraud or collusion," but where, despite any objection by Nationwide, the arbitrator

subsequently issued a revised arbitration award completely devoid of any finding or determination that the original arbitration award (i) was issued as a result of clear and convincing evidence of either fraud or collusion; (ii) was based upon fraud, misconduct, corruption or collusion; (iii) failed to adjudicate a primary issue that was submitted for arbitration; or (iv) contained simple mistakes and/or ambiguities that appeared on the face of the original arbitration award?

3. Whether the court committed an error of law in its order dated December 28, 2009 and entered December 29, 2009 by confirming revisions to a common law arbitration award that entailed and were founded upon considerations other than those specifically delineated by and through clear and unambiguous language contained in a provision of a written agreement between Nationwide and Gingrich expressly stating that the arbitration decision "on any legal, factual, evidential issue and verdict shall be final with no right of appeal absent clear and convincing proof of fraud or collusion," and further, where the revised arbitration determination was completely devoid of any finding or determination that the original arbitration award was (i) the result of clear and convincing evidence of either fraud or collusion; (ii) based upon fraud, misconduct, corruption or collusion; (iii) due to a failure to adjudicate a primary issue that was submitted for arbitration, or (iv) the result of correcting simple mistakes and/or ambiguities that appeared on the face of the original arbitration decision and award?

4. Whether the court committed an error of law in its order dated December 28, 2009 and entered December

29, 2009 where such order confirmed an award of attorney's fees in favor of Gingrich that was previously disallowed under the original arbitration decision, but where such an award of attorney's fees entailed and was founded upon considerations other than those specifically delineated by and through clear and unambiguous language contained in a provision of a written agreement between Nationwide and Gingrich expressly stating that the arbitration decision "on any legal, factual, evidential issue and verdict shall be final with no right of appeal absent clear and convincing proof of fraud or collusion," and further, where the revised arbitration determination awarding such attorney's fees was completely devoid of any finding or determination that the disallowance of such attorney's fees in the original arbitration award was (i) the result of clear and convincing evidence of either fraud or collusion; (ii) based upon fraud, misconduct, corruption or collusion; (iii) due to a failure to adjudicate a primary issue that was submitted for arbitration; or (iv) the result of correcting simple mistakes and/or ambiguities that appeared on the face of the original arbitration decision and award?

5. Whether the court committed an error of law in its order dated December 28, 2009 and entered December 29, 2009 where such order confirmed an award of future medical expenses in favor of Gingrich that was previously disallowed under the original arbitration decision due to limited medical documentation, but where such an award of future medical expenses entailed and was founded upon considerations other than those specifically delineated by and through clear and unambiguous language contained in a provision of

a written agreement between Nationwide and Gingrich expressly stating that the arbitration decision "on any legal, factual, evidential issue and verdict shall be final with no right of appeal absent clear and convincing proof of fraud or collusion," and further, where the revised arbitration determination awarding such future medical expenses was completely devoid of any finding or determination that the disallowance of such future medical expenses in the original arbitration award was (i) the result of clear and convincing evidence of either fraud or collusion; (ii) based upon fraud, misconduct, corruption or collusion; (iii) due to a failure to adjudicate a primary issue that was submitted for arbitration; or (iv) the result of correcting simple mistakes and/or ambiguities that appeared on the face of the original arbitration decision and award?

6. Whether the court committed an error of law in its order dated December 28, 2009 and entered December 29, 2009 where such order confirmed the award of wage loss benefits in favor of Gingrich in an amount substantially greater than the wage loss benefits awarded to Gingrich under the original arbitration decision, but where such an increase in the award of wage loss benefits entailed and was founded upon considerations other than those specifically delineated by and through clear and unambiguous language contained in a provision of a written agreement between Nationwide and Gingrich expressly stating that the arbitration decision "on any legal, factual, evidential issue and verdict shall be final with no right of appeal absent clear and convincing proof of fraud or collusion," and further, where the revised arbitration determination increasing the award of such lost wages was completely devoid

of any finding or determination that the lower amount of lost wages in the original arbitration award was (i) the result of clear and convincing evidence of either fraud or collusion; (ii) based upon fraud, misconduct, corruption or collusion; (iii) due to a failure to adjudicate a primary issue that was submitted for arbitration; or (iv) the result of correcting simple mistakes and/or ambiguities that appeared on the face of the original arbitration decision and award?

Upon review of the above errors complained of on appeal, this court finds all six go to the same issue of the propriety of this court's confirmation of the revised arbitration award. This court did not find cause to disturb the arbitrator's decisions.

The standard of review for common law arbitration is very limited. *Gargano v. Terminix Intern. Co., L.P.*, 784 A.2d 188, 193 (Pa.Super., 2001). In order for a court to modify or vacate an arbitration award, there must be fraud, a clear abuse of discretion, or flagrant disregard for the law. Specifically, the moving party has the burden of showing that there was fraud, misconduct, corruption or other irregularity which caused the rendition of an unjust, inequitable or unconscionable award. *Id.* An appellant who seeks to have a court overturn an arbitration award must show by clear and precise evidence that there is both an underlying irregularity and resulting inequity. *Id.* Arbitrators are the "final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either." *Id.*

The common law doctrine of *functus officio* provides that an arbitrator's authority is exhausted after issuing a final arbitration decision. *Stack v. Karavan Trailers, Inc.,*

864 A.2d 441 (Pa. Super., 2004). However, there are three exceptions to this doctrine, when an arbitrator can modify or correct an arbitration award upon application of one of the parties. *Id.* Those three exceptions are the following: first, an arbitrator can correct a mistake when it is apparent on its face; second, where the award does not dispose of an issue submitted, such that the arbitrator's function has not yet been exhausted; and third, where the award leaves doubt as to its thoroughness, such that the arbitrator is entitled to clarify. *Id.* This court found the exceptions applicable here.

In reviewing the record, and after argument held, this court found that despite delay, there was no irregularity or resulting inequity. As posited by appellee, the release delineated the various issues that were to be addressed, and which were within the scope of arbitrator Orwig's authority, under the mutual agreement of the parties. Following the issuance of the original arbitration decision, appellee brought to the arbitrator's attention that not everything that had been placed before the arbitrator had been disposed of. The fact that the arbitrator somehow lost track of the case or took an extraordinary amount of time to decide it is not grounds for reversal. As such, this court believes there was no such abuse of discretion, and the arbitration decisions should remain undisturbed.

In sum, this court found that while arbitrator Orwig's decisions followed a protracted timeline, the parties to had full opportunity to participate in the process and state their positions, and the reasoning and proceedings in support of arbitrator Orwig's decisions to have been well-supported. The end result of the process, both the

arbitration decision and the revised arbitration decision, were just and equitable decisions within the framework of the issues before and parameters placed upon arbitrator Orwig.

Further, appellee's original request for modification of the original arbitration award was timely made, within one week of the arbitrator's decision, in that it here was made a mere three days after the original decision. Further, although appellant has cited to the portion of the release which stated that the verdict of arbitrator Orwig would be final with "no right of appeal absent clear and convincing proof of fraud or collusion," this court found this provision to address the standard rights of appeal of either of the parties *to the courts directly*, and not to the arbitrator himself for reconsideration of his own award. Appellant had extensive opportunity before the issuance of the revised arbitration award to state with particularity the grounds upon which that party's contentions of impropriety within the arbitration were predicated. Lastly, this court found there was no legal cause to disturb the outcome of arbitration and the arbitrator's decision, and that the burden of proof, in order for the decision to be vacated, was not met by appellant.

For all of the above stated reasons, this court respectfully recommends that the instant appeal be denied.

The prothonotary shall forward the remainder of the file to the Superior Court.